## National Collegiate Athletic Association v. American Basketball Association

*Ralph B. D'Iorio* and *William Charles Hogg, Jr.,* for plaintiffs.

*Patrick T. Ryan* and *Richard G. Phillip,* for defendants.

BLOOM, J., August 5, 1974.—The matter before this court arises from a complaint in equity filed by plaintiff, National Collegiate Athletic Association (hereinafter NCAA) against the American Basketball Association (hereinafter ABA) and Howard E. Porter.

The complaint in equity seeks certain injunctive relief against defendant ABA only. It seeks damages from both defendants, ABA and Porter, for certain alleged tortious conduct.

Defendant ABA has filed an answer denying the allegations set forth in the complaint but the ABA has not filed any preliminary objections.

Defendant Porter has filed preliminary objections to said complaint alleging:

(1) That this court has no jurisdiction over the person of defendant Porter;

(2) That the complaint in equity against Porter does not set forth a cause of action upon which injunctive relief can be granted;

(3) That the complaint does not set forth a cause of action for damages;

(4) That the complaint does not join an indispensable party.

This opinion is written in disposition of defendant Porter's preliminary objections.

The complaint alleges that the NCAA is an unincorporated association which regulates intercollegiate athletics among its members. It also sponsors or conducts certain tournaments or championship events, including basketball tournaments. Under NCAA rules, participation in intercollegiate athletic events by members of the NCAA is limited to student athletes who meet the eligibility standards for amateurism as established by the NCAA. Pursuant to said rules, a student athlete is ineligible to participate in intercollegiate athletic events if "he takes, has taken, or has accepted the promise of pay, in any form, for participation in athletics; or he has entered into an agreement or any kind to compete in professional athletics, or to negotiate a professional contract; or he has, directly or indirectly, used his athletic skill for pay in any form, including the promise of pay to be received following the completion of his intercollegiate career; or he has ever signed a contract or commitment of any kind to play professional athletics, regardless of its legal enforceability or the consideration, if any, received; or he receives, or has ever received, directly or indirectly, a salary, reimbursement of expenses, or any other form of financial assistance from a professional sports organization for any purpose whatsoever; or he agrees, or has ever agreed, to be represented by an agent or an organization in the marketing of his athletic ability or reputation."

During the 1970-71 collegiate basketball season, defendant Porter participated on behalf of Villanova University in intercollegiate basketball games and tournaments sponsored by NCAA. It is alleged that on or about December 16, 1970, Porter entered into a contract with ABA, a professional basketball organization

whereby the ABA paid Porter the sum of $15,000 for signing the agreement. In general, the said agreement allegedly obligated Porter to play professional basketball for ABA in consideration for further sums of money. Subsequent to the alleged execution of said agreement, Porter participated in NCAA sponsored games and tournaments contrary to the rules and regulations of NCAA.

The complaint further alleges that on January 24, 1971, and February 4, 1971, Porter executed written statements that he had not orally or otherwise entered any agreement which would render him ineligible to participate in NCAA sponsored events. Plaintiff alleges that Porter had entered such an agreement and that Porter "willfully, knowingly, maliciously and falsely" represented that he had not done so and that said representations were made "with intent to deceive and defraud" the NCAA and its reputation.

As to ABA, the complaint alleges that it "enticed, induced and purposefully caused" Porter to enter the aforesaid agreement and that ABA "did so covertly, secretively and without disclosing to the NCAA." The complaint further alleges that ABA "with intent to deceive, mislead and defraud the NCAA" willfully and falsely represented that Porter had not signed a contract nor agreed to play professional basketball for ABA.

Relying upon the alleged representations made by Porter and ABA, plaintiff permitted Porter to participate in NCAA sponsored games and tournaments. As a result of the aforesaid representations, NCAA incurred certain money damages, including compensation for damage to the reputation of NCAA in sponsoring wholly amateur athletic events.

In count two of the complaint, plaintiff alleges that ABA has falsely represented on other occasions that

certain student athletes had not executed similar agreements to play professional basketball and that ABA "will continue to induce, entice and purposefully cause" other student athletes to enter professional contracts, without disclosing same to NCAA. It is further alleged that ABA will not disclose such other signings with the "intent to deceive, defraud and mislead the NCAA" to the damage and injury of the NCAA and its members. As a result, NCAA prays that the ABA be enjoined from such conduct and that ABA be required to disclose the name of each and every athlete "with collegiate eligibility remaining who has heretofore entered into or hereafter, directly or indirectly, expressly or impliedly, enters into any contract, commitment, declaration of intent or agreement, written or oral, to play professional basketball in or for the ABA," within 24 hours after same.

We now turn to a consideration of defendant Porter's preliminary objections, the first of which is that this court has no jurisdiction as to the person of defendant.

The complaint alleges that on February 4, 1971, Porter appeared before a notary public in Radnor Township, Delaware County, Pa., and executed under oath a statement that he was an eligible athlete under NCAA rules and that he had not, verbally or in writing, entered a contract or a statement of intent to play professional basketball with any organization. He further set forth that he had not been paid or received a promise of payment from any professional organization and that he had not been solicited to sign a contract or statement of intent to play professional basketball.

In addition, Porter signed a similar statement for Villanova University and it also alleged that he played basketball for Villanova after entering a professional

contract with the ABA. Subsequent thereto, Porter played basketball for Villanova both within and outside of Pennsylvania.

The applicable statutes in effect at the time of service upon Porter provide:

"(A)ny nonresident of this Commonwealth who . . . shall have committed a tortious act within this Commonwealth, or any such individual who at the time of the commission of the tortious act within the Commonwealth was a resident of this Commonwealth . . . shall be conslusively presumed to have designated and constituted the Secretary of the Commonwealth of Pennsylvania as his agent for the service of process in any civil action or proceedings instituted in the courts of the Commonwealth of Pennsylvania against such individual": 12 PS §341.

"(A)ny nonresident . . . who, acting outside of the Commonwealth . . . shall have caused any harm within this Commonwealth, shall be subject to service of process in any civil action or proceedings instituted in the courts of the Commonwealth of Pennsylvania, arising out of or by reason of any such conduct.": 12 PS §343.

Section 346 provides as follows:

"Such process shall be served, by the officer to whom the same shall be directed, upon the Secretary of the Commonwealth of Pennsylvania, by sending by registered mail, postage prepaid, at least fifteen days before the return day of such process, a true and attested copy thereof, and by sending to the defendant, by registered mail, postage prepaid, a like true and attested copy, with an endorsement thereon of the service upon said Secretary of the Commonwealth, addressed to such defendant at his last known address. The registered mail return receipts of the Secretary of the Commonwealth and of such defendant shall be

attached to and made a part of the return of service of such process: Provided, That if the defendant refuses to accept the notice mailed, or cannot be found at his last known address, the registered mail return receipt or other evidence of such facts shall be attached to and made a part of the return, and shall constitute sufficient service under the provisions of this section": 12 PS §346.

The sheriff's return in this case shows that two true and attested copies of the complaint were served on the Secretary of the Commonwealth of Pennsylvania by registered mail, postage prepaid. True and attested copies, properly endorsed to indicate prior service on the secretary were then sent to Porter by registered mail, postage prepaid, at his two last known addresses in Chicago, Ill., and Sarasota, Fla. The return receipts indicate that delivery was made and that each copy was received by Porter at the listed addresses.

Service in compliance with the statutes set forth above has been upheld by the Federal and Pennsylvania courts. See, Sussman v. Yaffee, 443 Pa. 12, 275 A.2d 364 (1971); E. J. McAleer & Co., Inc. v. Iceland Prod., Inc., 21 Cumb. 62 (1971), affirmed 222 Pa. Superior Ct. 738 (1972); Peterson v. Dickison, 334 F. Supp. 551 (W.D. Pa., 1971); Saccamani v. Robert Reiser & Co., Inc., 348 F. Supp. 514 (W.D. Pa., 1972). Therefore, we find no merit in this contention.

Defendant's second contention is that the complaint in equity does not set forth a cause of action against Porter upon which injunctive relief can be granted against Porter. As a corollary to this contention, defendant Porter contends that the action for damages as against him does not lie in equity and that, therefore, the entire cause of action for damages against him be dismissed.

As set forth above, the subject complaint seeks no

equitable relief against Porter. Plaintiff seeks monetary damages for certain torts allegedly committed by Porter in conjunction with ABA. The only injunctive relief sought by plaintiff is against ABA. However, plaintiff contends that since equitable relief is sought against ABA, the action for damages against Porter should be heard by a court of equity as ancillary to the equity action against ABA.

This court is familiar with the principle that once equitable jurisdiction has attached, equity has jurisdiction to do complete justice between parties and damages may be awarded for tort: Wortex Mills, Inc. v. Textile Workers, 380 Pa. 3, 109 A. 2d 815 (1954). Defendant Porter contends that to permit the cause of action against him to be heard in equity deprives him of the right to a trial by jury.

Although Pennsylvania Rule of Civil Procedure 1513 provides for a jury in equity, the use of a jury is discretionary with the court and then the verdict shall be only in the form of answers to specific questions and such verdict is not binding on the court. The issues and facts to be presented in the case against Porter may, in some instances, be identical to those presented against the ABA. The intent of Porter to allegedly defraud and deceive plaintiff is a serious issue which is not wholly dependent upon ABA's conduct in this case. The alleged damages to NCAA total $116,663 and punitive damages in the amount of $100,000 are sought against Porter alone. In light of the tenuous joinder of Porter in an equitable action directed soley against ABA, and in light of the serious nature of the claims against Porter, this court feels compelled to yield to Porter's contention that he be allowed his day in court before a jury. Therefore, we transfer plaintiffs' cause of action against Porter to the law side of the court pursuant to Pa. R. C. P. 1509(c), since, if plaintiffs'

allegations are proven, then there exists a full, complete and adequate remedy at law.

The last contention raised by defendant Porter is that the complaint does not join an indispensable party, to wit, Villanova University. With this contention, the court does not agree.

An indispensable party is a person having such a significant interest that a judgment cannot be entered without affecting its rights: Powell v. Shepard, 381 Pa. 405, 113 A. 2d 261 (1955). In the case before us, plaintiff is an entity having its own right to protect its individual interests. See, McDonald v. NCAA, 42 U. S. L. W. 1131 (Cal., 1974). As such, plaintiff has filed this action seeking relief for alleged injuries and damages which it alone has sustained and nowhere in the complaint does NCAA pray for damages incurred by any other person or entity. It is not clear to this court that Villanova University will in any way be prejudiced as to its legal rights by the outcome of this case.

Therefore, we enter the following:

## ORDER

And now, to wit, August 5, 1974, after consideration of argument and briefs submitted by counsel for NCAA and defendant Porter, before this court en banc, it is hereby ordered and decreed that:

(1) Defendant Porter's preliminary objections relating to personal jurisdiction and failure to join an indispensable party be and the same are hereby dismissed.

(2) Defendant Porter's preliminary objection in the nature of a demurrer to the complaint be and the same are hereby dismissed.

(3) Plaintiff's complaint as against defendant Porter is hereby certified to the law side of the court.