# Ursula O'Brien v. Comstock Foods, Inc.

[194 A.2d 568]

May Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed October 1, 1963

*Lisman & Lisman* and *Rosenberg & Rosenberg* for the plaintiff.

*Black, Wilson & Hoff* for the defendant.

**Holden, J.** This cause has been certified here before trial to settle a jurisdictional question. The action is one of four suits instituted by the plaintiff and her husband against Comstock Foods, Inc., a New York corporation. All of the actions are product liability cases in which the particular claimants seek to recover for personal injuries claimed to have been sustained by the plaintiff from the presence of a piece of glass in a can of beans prepared and packed by the defendant in Newark, New York.

How the product came to be distributed in Vermont does not appear. The complaint tells us only that the commodity was "placed . . . in the stream of commerce" in New York state. It was purchased by the plaintiff's husband in Burlington, Vermont, where she became injured when eating part of the contents of the can.

Service was made by delivery of copies to the Secretary of State for Vermont as provided in 12 V.S.A. §855:

> If a foreign corporation makes a contract with a resident of Vermont to be performed in whole or in part by either party in Vermont, or if such foreign corporation commits a tort in whole or in part in Vermont against a resident of Vermont, such acts shall be deemed to be doing business in Vermont by such foreign corporation and shall be deemed equivalent to the appointment by such foreign corporation of the secretary of the state of Vermont and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against such foreign corporation arising from or growing out of such contract or tort. The making of such contract or the com-

mitting of such tort shall be deemed to be the agreement of such foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served on the foreign corporation at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.

12 V.S.A. §856 requires the secretary of state and the plaintiff as well, to mail copies of the process to the defendant corporation by registered mail, directed to its principal place of business.

The defendant moved to dismiss the actions, claiming that, on the facts alleged, service of process under section 855 failed to achieve jurisdiction of the person of the corporate defendant. The defendant further contends that the application of the statute on the facts alleged would constitute a denial of due process of law as secured to it by the Fourteenth Amendment to the United States Constitution. Dismissal was denied and we are called upon to review that ruling.

The broadened scope of permissible state jurisdiction over the person of absent foreign corporations is not without limitation. The "certain minimal contacts" which will permit the acquisition of personal jurisdiction within the concept of *International Shoe Co.* v. *Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, must afford a "substantial connection" with the state of the forum. *McGee* v. *International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, 226; *Hanson* v. *Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, 1297.

The majority, in the Hanson case, held that the exercise, in Florida, of a power of appointment under a trust, of itself, did not give that state sufficient affiliation to acquire jurisdiction of the non-resident trustees by constructive service. The opinion of the Court, expressed by Chief Justice Warren, cautions that "it is a mistake to assume that this trend (away from the rigid rule of *Pennoyer* v. *Neff* to the flexible standard of *International Shoe Co.* v. *Washington, supra*), heralds the eventual demise of all restrictions on personal jurisdiction of state courts. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are the consequence of territorial limitations on the power of the respective states. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has

had the minimal contacts with that state that are a prerequisite to its exercise of power over him (citations omitted)." *Hanson* v. *Denckla, supra,* 2 L.Ed.2d at 1296.

The basic requirements of due process were fulfilled in the application of 12 V.S.A. §855 to the jurisdictional facts which prevailed in *Smyth* v. *Twin State Improvement Corp.,* 116 Vt. 569, 577, 80 A.2d 664, 25 A.L.R.2d 1193. There the foreign corporate defendant came into Vermont by way of its employees to perform the business which gave rise to the claim of negligence. The Court, in a careful opinion by the late Justice Blackmer, took the pains to point out that it limited itself to the precise problem presented. This was the circumstance of a foreign corporation which commits a single tort against a resident of Vermont, wholly within the territorial limits of this state.

It was held that the corporate defendant established substantial contact with Vermont by bringing its presence within our boundaries in the person of its employees to perform the work which gave rise to the cause of action. The Court went on to explain.

"No sound reason appears to exist why foreign corporations may not be held responsible in Vermont for wrongful acts done in Vermont. If a foreign corporation voluntarily elects to act here, it should be answerable here and under our laws. The consequences imputed to it lie within its own control, since it need not act within this state at all, unless it so desires." *Smyth* v. *Twin State Improvement Corp., supra,* at 575.

The vital factor in the statute is the intentional and affirmative action on the part of the non-resident defendant in pursuit of its corporate purposes within this jurisdiction. A single act, purposefully performed here, will put the actor within the reach of the sovereignty of this state, as in the Smyth case. So will active participation in the Vermont market, either by direct shipment, or by way of transmittal through regular distributors presently serving the Vermont marketing area.

The jurisdictional power to deal personally with a non-resident defendant in transitory actions of this type must be generated by the defendant's intentional participation here. Thus, when a plaintiff seeks to reach a foreign corporate defendant *in personam* by service on our secretary of state, it is incumbent upon the claimant to

plead sufficient facts to demonstrate that the defendant is causally responsible for the presence of the injuring agency within the state of Vermont. Without such a presentation in the record there is no justification for the conclusion that the defendant has yielded to the jurisdiction of our courts by its own volition within the concept of *Smyth* v. *Twin State Improvement Corp., supra,* 116 Vt. at 575.

To require less than this in the construction of the statute would present serious constitutional objections. "Full faith and credit" would become a matter of conjecture. See *Deveny* b.n.f. *Jamieson* v. *Rheem Manufacturing Co.,* C.C.A. Vt. 1963, 319 F.2d 124; Leflar, The Converging Limits of State Jurisdictional Powers, 9 Journal of Public Law 282 (1960) ; Sobeloff, Jurisdiction Over Non-Residents in Our Federal Jurisdiction, 43 Cornell L.Q. 196 (1957) ; Cf., Cardozo, The Reach of the Legislature and the Grasp of Jurisdiction, 42 Cornell L.Q. 210 (1957) ; Cleary, The Length of the Long Arm, 9 Journal of Public Law 293 (1960). See also Uniform Interstate and International Procedure Act, Art. I, Section 1.03 (a) (4) ; Handbook of the National Conference of Commissioners on Uniform State Laws, 1962, pp. 221-223.

The bare allegation that the defendant at Newark, New York put its product "into the stream of commerce," without more, is insufficient to show a voluntary contact or an intentional participation in Vermont. The fact that the can of beans was ultimately purchased and consumed here does not cure the defect.

The place where the final harm is done may control for purposes of making a choice of law. But considerations important to this area of the law are sometimes insubstantial for purposes of asserting jurisdiction over a non-resident defendant. *Hanson* v. *Deckla, supra,* 357 U. S. 235, 78 S.Ct. 1228, 2 L.Ed. at 1297.

■ If parts of Vermont were served directly by the defendant, or indirectly, by its customary distributors, knowledge of possible consequent injury from faulty packing, might well be imputed. But this essential jurisdictional factor cannot be supplied by speculation.

■ Unlike the Supreme Court of Illinois in *Gray* v. *American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d. 761, 766, we cannot infer that the defendant's products have substantial use and consumption in Vermont. The question certified was raised by

a motion to dismiss. Our inquiry is confined to those facts which are established by the record. *Hanley* v. *United Steel Workers,* 119 Vt. 187, 190, 122 A.2d 872; *In re Everett Estate,* 112 Vt. 252, 254, 23 A.2d 202; *Capital Savings Bank & Trust Co.* v. *Hammett,* 95 Vt. 47, 49, 112 Atl. 360.

In the complaint before us, it does not appear the defendant intended this product for Vermont, nor that its present or past commercial activity was such that it should have known that faulty packaging might have potential consequences in this jurisdiction. Without any presentation in the record of these basic requirements, due process is not achieved and personal jurisdiction fails.

Although the service was inadequate, the plaintiff would have us sustain the ruling below on the theory that the defendant has waived the defects and submitted to the jurisdiction of the court. The reasons given are that the defendant permitted the time for appearing and answering to expire before filing its motion to dismiss. While the motion was pending, the defendant filed an answer to the complaint. Later still, a formal appearance was entered.

The cases on which the plaintiff relies to support her claim of waiver of the jurisdictional defect are *Boright* v. *Williams,* 87 Vt. 245, 247, 88 Atl. 735, and *Howe* v. *Lisbon Savings Bank,* 113 Vt. 48, 29 A.2d 816. These cases were decided under rules which obtained under common law pleading and the original Practice Act. Much of this has been changed by 12 V.S.A. §1034:

### Dilatory Defenses

Every defense, in law or fact, to any pleading, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join an indispensable party. After a motion or pleading making either of the defenses numbered (6) or (7) has been filed and before hearing thereon, the pleading as to which such motion or pleading has been filed may be amended without payment of costs. No. defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or

motion. If a pleading sets forth a claim for relief to which the adverse party is not required to file a responsive pleading, he may assert at the trial any defense in law or fact to that claim, for relief. If a party files a motion or pleading and does not include therein all the defenses numbered (2) to (6), inclusive, then available to him, he may not thereafter raise any of said defenses or objections so omitted.

The pertinent provisions of this section were taken almost verbatim from Rule 12b of the Federal Rules of Civil Procedure. Neither the statute nor its ancestor in the federal rules makes any reference to either special or general appearance. The need for the distinction has disappeared for the emphasis is not on the type or nature of the appearance, but rather on the defense interposed. There is no longer any necessity to appear specially for the limited purpose of challenging the jurisdiction. Nor must the defendant withhold his answer for fear of conferring jurisdiction by the very act of replying. If responsive pleading is required he may challenge the court's jurisdiction over his person in the answer. But he has the option of resorting to a motion to dismiss if that is his choice. He will be held to have waived a defense specified in subdivisions (2) to (6) inclusive, only if he failed to include them in a motion or pleading at the time the objection was first available to him. Thereafter, omitted defenses within these categories are gone and cannot be introduced at a later time.

The rule permits one preliminary motion before the answer, or the pleader may incorporate the subject of preliminary motions in his answer. But that is the limit of his opportunity to present dilatory matters. The privilege of raising endless objections by a series of separate motions or pleas under the former practice, is no longer available. It provides an additional advantage of permitting a party to incorporate in a single motion and answer all of his objections to the proceeding as well as his defense to the merits of the controversy, without fear of waiving any valid objection save those he has not asserted. 1A Barron & Holtzoff, Federal Practice and Procedure, §§341, 343, 344 (Rules Ed.).

Since the jurisdictional defect was raised at the first opportunity, it was not waived by subsequent appearance and answer. The motion to dismiss was well taken and it should have been granted.

The question of whether the four actions in the combined appeal constitute an improper splitting of causes of action has not been certified by the court below. The issues involved are not essential to disposition of the appeal and consequently are not available for review.

At the time of oral argument, the plaintiff requested permission to plead additional facts if the complaint as originally stated should be held insufficient. 12 V.S.A. §1132 permits the amendment of pleadings in matters of substance at any stage of the proceedings, where the circumstances justify such action.

When the court has jurisdiction of the subject matter, the liberty to amend may be extended to correct jurisdictional facts. *Mansfield* v. *Goodhue,* 142 Me. 380, 53 A.2d 264, 265; *State ex rel Talaba* v. *Moreland,* 132 Ohio St. 71, 5 N.E.2d. 159, 161; *Hurley* v. *Wells-Newton Nat. Corp.,* 49 F.2d 914, 917; 71 C.J.S. Pleading, §288b, p. 639. Consequently we will order a remand to permit the plaintiff the opportunity to seek permission to amend under the direction and in the discretion of the trial court.

*Order denying the defendant's motion to dismiss is reversed. Cause remanded with leave to the plaintiff to apply for permission to amend her complaint within thirty days after remand. If application is not made, judgment will be entered for the defendant to recover its costs. Let the defendant recover its costs in this Court.*