**Angelo SACCAMANI, Plaintiff,**

v.

**ROBERT REISER & COMPANY, INC.,
Defendant,**

v.

**SEYDELMANN K.G. and Armour & Company, Third Party Defendant.
Civ. A. No. 71–809.**

United States District Court,
W. D. Pennsylvania.

Sept. 18, 1972.

---

Stephen A. Zappala, Pittsburgh, Pa., for plaintiff.

George I. Buckler, Richard D. Klaber, Norman J. Cowie, Pittsburgh, Pa., for defendant.

## MEMORANDUM and ORDER

McCUNE, District Judge.

We are confronted with a motion by Ludwig Seydelmann et al., trading and doing business as Maschinenfabrik Seydelmann KG (herein called Seydelmann) to dismiss the action (and quash service) brought against Seydelmann by defendant Robert Reiser & Company, Inc. (herein called Reiser).

The plaintiff on September 17, 1969, was operating a meat cutting machine while an employee of Armour and Company. A so-called rotor on the machine struck plaintiff in the face seriously injuring him. Alleging that the machine was defective he sued Reiser, the company which had sold the machine to Armour.

Reiser seeks to bring on the record as third-party defendants the manufacturers of the machine, the Seydelmanns (a limited partnership). All of the Seydelmanns live in Germany where they have manufactured and exported machinery for some years. They were served by service on the Secretary of the Commonwealth of Pennsylvania and by registered mail. They now allege that this court cannot acquire jurisdiction of them giving rise once again to the arguments which come with ever increasing frequency as products liability actions proliferate against the sellers of foreign products. See the interesting study "Long Arm Wrestling in Pennsylvania," University of Pittsburgh Law Review, Summer of 1972, Volume 33, No. 4, by James M. Mabon.

According to affidavits filed by Reiser, the Seydelmanns are not strangers.

Reiser states that his company has been sole distributor for Seydelmann's products since 1964 and in the last five years (1967 to 1971) Reiser has sold in Pennsylvania 157 meat choppers and 66 meat grinders made by Seydelmann. Further Seydelmann had been told by letter that the machine in question was destined for Pittsburgh where it was shipped directly, via Baltimore, for installation in Armour's new plant. The order of course, went from Reiser to Seydelmann and Reiser paid the duty which was in turn added to Armour's bill.

According to Seydelmann there has not been a member of the partnership in Pennsylvania since 1962 when one came to the United States to sell Seydelmann products. Seydelmann contends this was an isolated order directed by Reiser to Seydelmann. The affidavits would indicate otherwise.

The Act of July 1, 1970, P.L.—, 12 P.S. § 342 states the following:

"From and after the passage of this act, any nonresident of this Commonwealth, who, acting individually . . . . or through an agent . . . shall have done any business in this Commonwealth . . . . shall be conclusively presumed to have designated the Secretary of the Commonwealth . . . . as his agent for the service of process in any civil action . . . . instituted in the courts of the Commonwealth of Pennsylvania . . . . if and only if at the time the cause of action accrued or the harm or financial loss occurred, the nonresident . . . . shall have been doing any business within this Commonwealth . . . ." 12 P.S. § 342.

The Act then states at 12 P.S. § 344:

*"Doing business; what constitutes:*

"For the purpose of determining the jurisdiction of the courts within this Commonwealth, the doing by any individual within this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit . . . . or the doing of a single act in this Commonwealth for such purpose with the intention of initiating a series of such acts, or the shipping of merchandise directly or indirectly into or through this Commonwealth . . . . shall constitute 'doing business'." 12 P.S. § 344.

■ It is our opinion that this Act permits service on the Secretary of the Commonwealth (and the Seydelmanns by registered mail) and that such service, once made on the Seydelmanns in this case, gave jurisdiction to this court of the instant issues, save for the questions referred to later on.

It is plain to us that the partners as individuals had been selling machinery through their distributor in Pennsylvania for a long time. They shipped merchandise directly into the Commonwealth and had done it for profit.

Two questions remain—does the act apply and is it constitutional under the leading case of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)?

■ The accident took place on September 17, 1969. The suit was filed on August 30, 1971. Service on Seydelmann was made in 1972. Goodrich-Amram, 1972 Supplement, 2077(a)–21, page 860, states that the 1970 Act is operative as to all causes of action in existence at the time of its passage; it is not limited to causes of action which arise thereafter, citing Sussman v. Yaffee, 443 Pa. 12, 275 A.2d 364 (1971).

The remaining question is more difficult. Since Pennoyer v. Neff, 95 U.S. 714 (1877), 24 L.Ed. 565 it has been held that fourteenth amendment due process requires some legally recognizable relationship with the forum before a court may exercise jurisdiction over one's person. International Shoe Co. v. Washington, supra, required that a defendant have "certain minimum contacts with it [the state] such that the maintenance of the suit does not offend tradi-

tional notions of fair play and substantial justice."

 It does not offend our traditional notions of fair play and substantial justice to say that if we are to permit suits on the theory of strict liability against the sellers of products, we should require the manufacturers of those products to defend the products here when the manufacturers intentionally shipped them here for sale. Nor do we think it makes any difference that the manufacturer resides overseas. International trade is as commonplace as interstate trade in many products and the jet engine allows a German manufacturer to come here about as easily as one from California. We see no difference in requiring the Seydelmanns to defend their products here and requiring some United States manufacturer to do the same so long as they both ship goods into Pennsylvania for sale.

Granted, some inconvenience will be caused Seydelmann but Seydelmann's distributor has been sued here and he must answer. Isn't it fair that the manufacturer be required to answer here as well? It might be argued that the cost of answering is a cost of doing business and the business was done here. Why not make jurisdiction available at any location where the stream of commerce takes these machines, especially where they have been repeatedly sold. To put it another way, should the manufacturer of a foreign product who ships dozens of them into the United States through one single distributor be allowed to avoid jurisdiction because he has no dealers in Pennsylvania and no other so-called contacts with Pennsylvania? We held jurisdiction to be present in Scafati v. BMW, 53 F.R.D. 256 (W.D.Pa.1971). See also Benn v. Linden Crane Co., 326 F.Supp. 995 (E.D.Pa.1971). It has been held that jurisdiction should exist at least in those states where the defendant knows his products have come to rest, O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 194 A.2d 568 (1963). See also Gorso v. Bell Equipment Corp., 330 F.Supp. 834 (W.D.Pa.1971).

In our view the motion to dismiss must be in turn be dismissed in the light of the present Pennsylvania statute and the present state of the case law. It is so ordered.