Kevin NOVINGER and Darlene Novinger, Plaintiffs,

v.

E. I. DuPONT deNEMOURS & CO., INC., et al., Defendants,

and

MERCEDES–BENZ OF NORTH AMERICA, INC., Defendant and Third Party Plaintiff,

v.

LESONAL–WERKE et al., Third-Party Defendants.

Civ. No. 79–1188.

United States District Court, M. D. Pennsylvania.

March 23, 1981.

Smith, Chamberlain & Hedger, Lee C. Swartz, Harrisburg, Pa., for plaintiffs.

Gratz, Tate, Speigel, Ervin & Ruthrauff, Philadelphia, Pa., for Mercedes-Benz.

Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Lesonal-Werke.

## MEMORANDUM

RAMBO, District Judge.

A motion to dismiss a third party complaint is before the court. Third-party de-

fendant Deutsche Akzo Coatings GmbH (DAC),[1] a German manufacturer of automobile repair products, asserts that this court lacks jurisdiction over it and that the third-party complaint fails to state a claim upon which relief may be granted.

Plaintiffs sued several defendants who are in some way involved with auto body work. Jurisdiction is based on diversity of citizenship. Kevin Novinger alleges that his contact with certain products used to finish automobiles caused permanent severe neurological damage. The complaint states that he was a painter in the service department of an automobile dealership from January to May of 1977. One of the defendants, Mercedes-Benz of North America, Inc. (MBNA), was granted leave to file a third-party complaint against DAC. DAC responded with a motion to dismiss the complaint.

### Jurisdiction

DAC's affidavit supporting its disclaimer of jurisdiction recites that DAC has no direct contacts with Pennsylvania. Lesonal is the tradename for DAC's car repair products. Lesonal products have not been sold for use in the United States since January 1, 1978. Before that Lesonal products were sold to Original Imports, Inc., a Massachusetts company. The sales were made in Europe. According to the affidavit, "DAC has no knowledge of any Lesonal car repair products being shipped to Pennsylvania by Original Imports or any other party."

To support its claim that the court has properly exercised jurisdiction over DAC, MBNA presented evidence that during 1976–77 there were forty-seven separate sales of Lesonal products to Myers Oldsmobile, Kevin Novinger's employer. R. C. Cook Company, a Pennsylvania dealer in auto body supplies, sold the paint to Myers.

 It is well settled that the party claiming that the court has jurisdiction over another litigant is the one who has the burden of proof on that issue. *Hicks v. Kawasaki Heavy Industries*, 452 F.Supp.

1. DAC was formerly Lesonal-Werke.

130 (M.D.Pa.1978). MBNA has established by affidavit that numerous cans of Lesonal products were purchased by Myers Oldsmobile in the regular course of business. DAC has proffered no evidence that the presence of these products in Pennsylvania was a singular or unexpected occurrence. The court finds on these facts that the exercise of jurisdiction in personam over DAC does not offend the constitutional limits of due process.

■ In a diversity action when a question of jurisdiction over the person arises, a federal court must first look to the law of the state in which it sits to find whether the authority for the exercise of jurisdiction exists. *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Pennsylvania's legislature has enacted the Uniform Interstate and International Procedure Act.[2] 42 Pa.C.S.A. § 5321, *et seq.* The act permits the courts of the Commonwealth of Pennsylvania to exercise jurisdiction over persons who do business in the state. It provides:

Section 5322(a)(1) Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

. . . . .

(iii) The shipping of merchandise directly or *indirectly* into or through this Commonwealth.

. . . . .

(b) In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States. (Emphasis supplied.) 42 Pa.C.S.A. § 5322.

**2.** Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978.

**3.** Pennsylvania does not limit the use of its statute to the party initiating a lawsuit, nor is

Given the breadth of this statute, there can be no question that Pennsylvania law authorizes the exercise of jurisdiction which is at issue here.[3]

■ Once the court is satisfied that state law is no barrier to jurisdiction, it must still determine whether the exercise of jurisdiction, given the facts of the case, is consistent with the due process clause of the Fourteenth Amendment. The basic constitutional considerations have been developed in a series of United States Supreme Court cases beginning with *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In that case the court stated:

Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties or relations.

But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. (Citations omitted.) *International Shoe*, p. 319, 66 S.Ct. p. 160.

Applying these principles to the facts before it, the Court held that it was reasonable and just to expect International Shoe Company to defend a lawsuit in Washington.

its use limited to residents of the Commonwealth. *Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724 (3d Cir. 1975).

The contacts of International Shoe Company with the state of Washington which justified in personam jurisdiction were more extensive than those of the present case. International Shoe employed several salesmen who lived and worked in the state, though the company maintained no office there. Yet in a later case, *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court significantly lessened the quantity and quality of the contacts which could subject a defendant to personal jurisdiction. In *McGee* an out-of-state insurance company assumed an insurance obligation to an individual residing in California. It mailed a certificate of reinsurance to the insured in California and received premium payments from there. The beneficiary of the policy sought to enforce it in the courts of California. The Supreme Court held that these contacts were sufficient to give the California courts the right to provide a forum to redress the grievances of the beneficiary.

Against this background, several federal district courts sitting in Pennsylvania have upheld the exercise of personal jurisdiction on facts similar to the present case. They found not only that the Pennsylvania statute permitted the exercise of personal jurisdiction, but that the shipping of products into Pennsylvania through a distributor, that is indirectly, established the minimum contact with the forum state required to satisfy the constitutional standards of due process. *Hicks v. Kawasaki Heavy Industries*, 452 F.Supp. 130 (M.D.Pa.1978) (manufacturer of motorcycles sold in Japan to American distributor); *Gorso v. Bell Equipment Corp.*, 376 F.Supp. 1027 (W.D.Pa.1974) (French crane manufacturer sold crane indirectly through distributor); *Saccamani v. Robert Reiser and Co., Inc.*, 348 F.Supp. 514 (W.D.Pa.1972) (German manufacturer of meat choppers sold in Pennsylvania by a distributor); *Scafati v. Bayerische Motorem Werke AG*, 53 F.R.D. 256 (W.D.Pa.1971) (German automobile manufacturer); *Benn v. Linden Crane Co.*, 326 F.Supp. 995 (E.D.

Pa.1971) (Swedish crane manufacturer sold through distributive chain).[4]

DAC questions the validity of these cases in light of two recent United States Supreme Court decisions. In the first lawsuit, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), plaintiffs, owners of an Audi involved in a collision while they were traveling through Oklahoma, sued: Seaway Volkswagen, Inc., a retail dealership in New York from which the Audi was purchased; Audi, the automobile manufacturer; Volkswagen of America, Inc., the corporation which imported Audis to the United States and was the initial distributor for the country; and World-Wide Volkswagen Corporation, a regional distributor of automobiles selling to retail dealers in New York, New Jersey and Connecticut. Suit was brought in a state court in Oklahoma. Seaway and World-Wide, the *retail dealer* and *regional distributor*, challenged the court's jurisdiction over them. In its review of the facts the Supreme Court noted, "[T]here was no showing that any automobile sold by World-Wide or Seaway has ever entered Oklahoma with the single exception of the vehicle involved in the present case." *World-Wide Volkswagen*, 444 U.S. at 289, 100 S.Ct. at p. 563. The Court ruled that, under the due process clause of the Fourteenth Amendment, the proof of one isolated contact was insufficient to support the exercise of jurisdiction over World-Wide and Seaway by the Oklahoma court.

Plaintiffs in that case argued that the mobility of the product made it foreseeable that the Audi would find its way to Oklahoma. This foreseeability, they claimed, made it fair to require the parties to defend a lawsuit in Oklahoma. The Court responded, " '[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the due process clause." *World-Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at p. 566. It distinguished the circumstances which made it reasonable to

---

4. Though these cases were decided when the predecessor (15 P.S. § 2011) of the current Pennsylvania longarm statute was in force, the prior statute also included within the meaning of doing business the shipping of merchandise into the state, directly or indirectly.

expect Audi, the manufacturer, and Volkswagen of America, Inc., the distributor for the United States, to defend a lawsuit in Oklahoma, but unreasonable to require the retail dealer and a distributor whose territory was limited to the Northeast to appear in a distant state. The Court stated:

Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *World-Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at p. 567.

DAC admits that prior to 1978 it sold car finishing products to an American importer, thus placing them in a stream of commerce bound for the United States. A significant number of those products were sold to one dealership in Pennsylvania. These facts raise a presumption, unrebutted by DAC, that the manufacturer could expect that in the normal course of business activity some paints and finishes would be purchased in Pennsylvania. To require proof that DAC had actual knowledge that its products reached Pennsylvania would be to ignore commercial reality.

In the case before this court, DAC is unlike the retail dealer and regional distributor of *World-Wide Volkswagen*. They had limited markets far from Oklahoma. DAC, on the other hand, has a market spanning many countries. DAC's role is comparable to that of Audi, the manufacturer. The Supreme Court saw no constitutional barrier to suit against Audi in Oklahoma.

The second Supreme Court case cited by DAC is *Eschmann Bros. and Walsh, Ltd. v. Mueller and Co.*, 444 U.S. 1063, 100 S.Ct. 1003, 62 L.Ed.2d 745 (1980). Mueller and Co., an Illinois corporation, is a manufacturer of medical instruments. It was sued when the tip of an instrument it made broke off and lodged in a patient's body. Mueller sought to join Eschmann Bros. & Walsh Limited, a corporation of the United Kingdom, which manufactured the instrument tip. The suit was in a state court in Colorado. Eschmann asserted that the Colorado courts had no jurisdiction over it. The Colorado Court of Appeals held that there was jurisdiction. The Colorado Supreme Court refused to review the case, whereupon Eschmann petitioned the United States Supreme Court for a writ of certiorari. The writ was granted, and, in the same order, the case was remanded to the Colorado Court of Appeals for consideration in light of *World-Wide Volkswagen*, supra. This disposition provides no guidance for the present case. The factual record is silent as to how many of Eschmann's instrument tips reached Colorado. It is unclear whether the tip at issue arrived in Colorado through an established chain of product distribution or in the medical bag of a doctor. This court must rely on the Supreme Court's opinion in *World-Wide Volkswagen* for its guidance, since the remand in *Eschmann* is of questionable significance.

DAC would have the court adopt the reasoning of the Court of Appeals in *Hutson v. Fehr Bros., Inc.*, 584 F.2d 833 (8th Cir.) (en banc), *cert. den.* 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654, *sub nom. Fehr Bros., Inc. v. Weissenfels* (1978). In that case the court declined to uphold an Arkansas court's exercise of in personam jurisdiction over an Italian company. The latter purchased chain in Yugoslavia, repackaged the chain and sold it as its own to a British corporation. The British corporation distributed the chain in the United States. In weighing the facts under the "reasonable and just" test of *International Shoe Co. v. Washington*, supra., the Court of Appeals specifically noted, "Weissenfels [the Italian

repackager] neither manufactured the defective chain nor sold or marketed it in the United States." *Hutson* at 836. Even with that distinction, the court was divided in *Hutson*. The vote split four to three. The dissenting judges argued that, under the economic realities of the situation, the Italian repackager had purposefully availed itself of the protection of the laws of Arkansas by participating in the line of product distribution leading to that state. They believed there would be no violation of due process if the company were obliged to defend a lawsuit in Arkansas. In the case *sub judice*, DAC is the manufacturer, not a repackager.

Adherence to economic and commercial realities has led to a finding of personal jurisdiction in several recent cases similar to the one at bar. In *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975) the Court of Appeals stated:

> [I]t is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products. *Honeywell*, p. 1144.

In our own circuit the Court of Appeals, in reviewing a copyright infringement case, found that a federal district court in New Jersey had personal jurisdiction over a California producer who had permitted another party to transmit one of the producer's programs over interstate airways. *Edy Clover Productions, Inc. v. NBC, Inc.*, 572 F.2d 119 (3d Cir. 1978). See also *Coulter v. Sears, Roebuck and Co.*, 426 F.2d 1315 (5th Cir. 1970); *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231 (9th Cir. 1969).

### Motion to Dismiss for Failure to State a Claim

The third-party complaint alleges that Novinger "may have" used the Lesonal products when he was working in the auto body shop at Myers Oldsmobile. MBNA claims that DAC is "solely liable to plaintiff but if not solely liable then jointly and severally liable." DAC's motion to dismiss the complaint because it fails to state a claim upon which relief may be granted is two pronged. First, DAC states that the allegation that DAC is "solely liable" to plaintiff is not in conformity with Federal Rules of Civil Procedure 14(a). The relevant part of Rule 14(a) provides:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or *may be liable to him* for all or part of the plaintiff's claim against him. (Emphasis supplied.)

Under Rule 14(a) a third-party defendant may not be impleaded on the basis that he is solely liable to the plaintiff. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 368 n.3, 98 S.Ct. 2396, 2399–2400 n.3, 57 L.Ed.2d 274 (1978). DAC may be impleaded for contribution. Uniform Contribution Among Tort-Feasors Act, 42 Pa.C.S.A. § 8321 *et seq.*[5] The allegation that DAC is solely liable to plaintiff is improper and will be stricken. However, because MBNA also alleges that DAC is jointly liable to plaintiff, the third-party complaint states a claim for contribution without the allegation of sole liability.

DAC further urges that the third-party complaint contains no factual allegations to establish the liability of DAC to the plaintiff which would supply the legal basis for being impleaded as a joint tortfeasor. MBNA responds that the third-party complaint when read with the plaintiffs' amended complaint (a copy of which is attached to the third-party complaint) satisfies the notice requirements of the Federal Rules of Civil Procedure. It is possible to infer that MBNA believes that Lesonal products had the same chemical components as the other auto body finishes listed in the

---

**5.** Act of July 9, 1976, P.L. 586, No. 142, § 2 eff. June 27, 1978 (Reenactment of act of July 19, 1951, P.L. 1130, § 2).

amended complaint and that, if the products named in the amended complaint harmed Kevin Novinger, then so also did the Lesonal products. The third-party complaint does state that DAC manufactures paint and paint products which Kevin Novinger may have used during the course of his employment at Myers Oldsmobile. The plaintiffs' amended complaint alleges that the paints Novinger used in his work contained neurotoxins which caused his injuries. It goes on to state several theories of liability.

A complaint may be dismissed under Rule 12(b)(6) only if the court finds that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Reading the attached complaints together and construing them in the light most favorable to the third party plaintiff, the court cannot make the required finding. Accordingly, DAC's motion to dismiss the complaint for failure to state a claim upon which relief may be granted will be denied.