Emery v. Shell Oil Co., No. 80-2-09 Wncv (Crawford, J., Jan. 14, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT

Washington Unit

CIVIL DIVISION

Docket No. 80-2-09 Wncv

Daniel Emery and Liselle Emery
     Plaintiffs

     v.

Shell Oil Co., et al.
     Defendants

### DECISION ON BARTON SOLVENTS' MOTION TO DISMISS

Plaintiff Liselle Emery alleges that Daniel Emery, recently deceased, developed a serious illness caused by exposure to benzene in various products he used throughout his career in Vermont's granite industry and at other positions in Vermont. Among the numerous defendants is Cleveland Lithichrome (Cleveland), which is alleged to have sold products into Vermont that included benzene and which caused Mr. Emery's fatal illness.

Cleveland disclaims any knowledge of benzene in its products but alleges that, if there was any, it originated in solvents purchased from Barton Solvents (Barton), which were incorporated into its products from the 1980's to 2000. In a third-party complaint, Cleveland seeks implied indemnification from Barton. There is no first-party claim against Barton. Barton, an Iowa corporation based in Iowa with no presence in Vermont, has filed a Rule 12(b)(2) motion to dismiss for lack of specific personal jurisdiction.[1]

*Burden/Standard*

Barton is seeking dismissal "on the affidavits," placing the burden on Cleveland to come forward with a prima facie showing of personal jurisdiction. The Vermont Supreme Court has described the burden as follows:

> A defendant asserting that the court lacks jurisdiction over the person may raise such a challenge by motion following service of the summons and complaint. The rule contemplates the determination of jurisdictional issues in advance of trial. In deciding a pretrial motion to dismiss for lack of jurisdiction over the person, a court has considerable procedural leeway, and may determine the motion on the basis of affidavits alone; may permit discovery concerning the motion; or may conduct an evidentiary hearing on the merits of the motion. The latter course is desirable where the written materials have raised questions of credibility or disputed issues of fact. If the court chooses to determine the issues on the basis of affidavits alone without an evidentiary hearing the plaintiff is only

---

[1] Cleveland concedes that there can be no basis for general personal jurisdiction over Barton in Vermont.

required to make a prima facie showing of jurisdiction, that is, he need only demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.

*Roman Catholic Diocese v. Paton Insulators, Inc.*, 146 Vt. 294, 296 (1985) (citations omitted); accord *Godino v. Cleanthes*, 163 Vt. 237, 239 (1995). Neither party has argued that the facts are disputed or that there are any significant credibility issues requiring any evidentiary hearing.

*Facts*

Barton supported its motion to dismiss with an affidavit. Cleveland opposed dismissal based solely on the allegations of the pleadings, and did not contest any of the allegations in Barton's affidavit, which are consistent with those of the pleadings. After the motion was fully briefed, at oral argument, Cleveland requested an opportunity to conduct jurisdiction-related discovery before a ruling. The court allowed limited discovery for this purpose. Following discovery, Cleveland supplemented the record with the two admissions described below, which are consistent with the pleadings and Barton's affidavit. Cleveland has come forward with no other evidence. Based on the allegations in the pleadings, the affidavit, and Barton's two admissions, the facts are as follows.

Plaintiff alleges (and the court assumes for current purposes) that Cleveland, among others, produced benzene-containing products that were distributed into Vermont, that Mr. Emery came into contact with these products through his work in the stone business, and that the products contributed to his illness. Cleveland is a Kansas corporation with a principal place of business in Kansas. Cleveland alleges that any benzene in its products originated in solvents supplied by Barton that were incorporated without alteration into its own products.

Barton is an Iowa corporation with a principal place of business in Iowa. It is a "stocking wholesale distributor of industrial chemicals, oils, surfactants, and plasticizers." Affidavit of Edward J. Walsh, ¶ 4 (filed Sept. 3, 2009). It has distribution facilities in Iowa, Kansas, and Wisconsin, and serves industrial customers in the Midwestern states. It has never marketed or conducted business in Vermont, never distributed its products into Vermont, never derived any significant revenue from any goods sold or services rendered in Vermont, and it has no other form of contacts with or corporate presence in Vermont. Barton admits that it was generally aware that Cleveland incorporated Barton's products into its own, and that Barton's business included the production of coatings used in the granite industry.

*Vermont's Long-Arm Statutes*

As a general matter, Vermont's long-arm statutes reflect "a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause." *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 40 (1990) (so ruling in the context of 12 V.S.A. § 913(b); accord *Bard Bldg. Supply Co., Inc. v. United Foam Corp.*, 137 Vt. 125, 127 (1979) (so ruling in the context of 12 V.S.A. § 855). "The jurisdictional issue must therefore be resolved under federal constitutional law, as defined in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny." *Northern Aircraft*, 154 Vt. at 41.

*Federal Law*

Barton's only alleged contact with Vermont is as the supplier of a component that was incorporated into Cleveland's products that were distributed into Vermont in the stream of commerce. The two key United States Supreme Court cases in this setting are *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) and *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987).

In *World-Wide Volkswagen*, the Robinsons had purchased an Audi from an Audi retailer in New York and then moved to Oklahoma. An accident in Oklahoma prompted the Robinsons to file a products liability action—in Oklahoma—against several Audi-related defendants for defective design and positioning of the fuel tank assembly. The defendant retailer and the regional Audi distributor for New York, separate corporations which are wholly independent of the manufacturer, sought dismissal for lack of personal jurisdiction in Oklahoma, neither having ever done any business there. The Oklahoma Supreme Court found jurisdiction in Oklahoma principally because cars are so mobile that the defendants should have foreseen that their products would cause harm there.

The United States Supreme Court reversed. The court explained that foreseeability of harm is not the deciding factor.

> This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. . . .

> When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

> But there is no such or similar basis for Oklahoma jurisdiction over World-Wide [the regional distributor] or Seaway [the local retailer] in this case.

Seaway's sales are made in Massena, N.Y. World-Wide's market, although substantially larger, is limited to dealers in New York, New Jersey, and Connecticut. There is no evidence of record that any automobiles distributed by World-Wide are sold to retail customers outside this tristate area. It is foreseeable that the purchasers of automobiles sold by World-Wide and Seaway may take them to Oklahoma. But the mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."

*World-Wide Volkswagen*, 444 U.S. at 297–98. With that, the Court concluded that any contacts that the defendants had with Oklahoma were too remote to support personal jurisdiction there.

The Court revisited the stream-of-commerce theory in *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987), a component or supplier case. In *Asahi*, a California tort plaintiff sued a Taiwanese tire tube manufacturer, claiming it was responsible for a blowout in his motorcycle's tire, causing his injuries. The tube manufacturer filed a third-party claim for indemnity in California against its Japanese valve-assembly supplier, Asahi. Asahi sold its valves in Taiwan directly to the tube manufacturer for incorporation into its products, which were distributed worldwide. Asahi's sales to the tube manufacturer accounted for a relatively small percentage of its total sales (though a large number of units), and Asahi knew that a portion of those valves was sold in California every year. The California Supreme Court concluded that personal jurisdiction existed in California because Asahi placed its component products in the stream of commerce and was aware that some would be sold in California.

In a plurality decision, Justice O'Connor, and three other justices, rejected the California's Supreme Court's analysis.

The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 112 (1987). This has become known as the stream-of-commerce-plus theory.

Separately, Justice O'Connor ruled that personal jurisdiction would be unreasonable in any event, offending traditional notions of fair play and substantial justice. California has little interest in an indemnity claim between two foreign corporations that does not affect a California citizen, and the burden on the indemnity defendant would be high since it would have to defend in California as opposed to Taiwan or Japan.

4

Justice Brennan wrote the principal concurring opinion. He agreed with Justice O'Connor that jurisdiction in California would be unreasonable, and the case was resolved in Asahi's favor on that issue. He, and three other justices, however, disagreed with Justice O'Connor's stream-of-commerce analysis.

Justice Brennan reasoned as follows:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id*. at 117. Justice Brennan concluded that Asahi knew that the distribution chain would sweep its products into California, participated in that distribution chain, thus purposefully took advantage of the California market, and therefore its contact with California was adequate to support jurisdiction there. *Id*. at 121.

Uncertainty following *Asahi's* plurality treatment of the stream-of-commerce theory has led some courts to adopt the Brennan test and some to adopt the O'Connor test. "Other courts, including the Federal Circuit, have avoided adopting either test and instead analyze stream of commerce questions on a case-by-case basis." Megan M. LaBelle, Patent Litigation, Personal Jurisdiction, and the Public Good, 18 Geo. Mason L. Rev. 43, 66 n.134 (2010); accord *Lesnick v. Hollingsworth & Vose, Co.*, 35 F.3d 939, 945 n.1 (4th Cir. 1994) (noting the circuit split).[2]

*Analysis*

This case falls squarely under *World-Wide Volkswagen* and *Asahi*. The Vermont Supreme Court has not developed the stream-of-commerce theory as reflected in those cases. However, the issue here is fundamentally one of federal due process.

*Minimum contacts*

In arguing that jurisdiction is proper in this court, Cleveland's argument with regard to

---

[2] Some clarity may be brought to the matter when the United States Supreme Court decides the appeal from *McIntyre Machinery, Ltd. v. Nicastro*, 987 A.2d 575 (N.J. 2010); 131 S.Ct. 62 (granting cert.). The appeal was argued on January 11, 2011. The transcript is available at http://www.supremecourt.gov/oral_arguments/ argument_transcripts/09-1343.pdf.

5

contacts substantially is this:

> Barton Solvents supplied its products to Cleveland Lithichrome, whose monumental products are nationally distributed. Third-Party Complaint at ¶¶ 6–8. Barton Solvents knew that its products are nationally distributed. Third Party Complaint at ¶¶ 6–8. Barton Solvents knew that its solvents would be incorporated into the products manufactured by Cleveland Lithichrome. See *id*. at ¶ 6. This is not a case where the defendant could not foresee that its product would end up in Vermont. Barton Solvents' market here is not limited to a particular region, as was the case in *World-Wide Volkswagen Corp*. There, the defendant's market was "limited to dealers in New York, New Jersey, and Connecticut. There [was] no evidence of record that any automobiles distributed by World-Wide [were] sold to retail customers outside of this tristate area." 444 U.S. at 298. In contrast, Barton Solvents knew that its product was being incorporated into Cleveland Lithichrome products that would be distributed nationally. See Third-Party Complaint at ¶¶ 6–8.

Cleveland Lithichrome's Opposition to Dismissal at 4 (filed Sept. 21, 2009). In other words, Cleveland argues that Barton should be subject to suit in Vermont because it knew that its products were being marketed nationally and some in fact were sold in Vermont.

This argument has several defects. First, Cleveland's argument reflects an even broader stream-of-commerce theory than even Justice Brennan endorsed in *Asahi*. Justice Brennan's analysis was not that Asahi should be subject to the jurisdiction of every state because it was aware that its products were being marketed nationally. Asahi specifically knew that the stream of commerce was taking its products to California routinely, not incidentally. Contacts thus were sufficient in California. The United States Supreme Court has never endorsed a stream of commerce theory as broad as that apparently advocated here by Cleveland.

Second, even if Cleveland's broad theory were permissible, the facts of this case do not support it. Cleveland cites to paragraphs 6–8 of the third-party complaint in support of the allegation that Barton knew that its products, as incorporated into Cleveland's, were being distributed nationally. The cited paragraphs say no such thing:

> 6.      Beginning in the early 1980s and continuing through 2000, Cleveland Lithichrome purchased solvents used to manufacture its products from Barton Solvents.

> 7.      Cleveland Lithichrome incorporated solvents supplied by Barton Solvents into its products without substantially changing the solvents in any way.

> 8.      The Cleveland Lithichrome products were in turn supplied by Cleveland Lithichrome to its distributors without any substantial change in the solvents supplied by Barton Solvents and, on information and belief, reached the end users without any substantial change in the solvents supplied by Barton Solvents.

6

Cleveland Lithichrome's Third Party Complaint at 2 (filed July 7, 2009). There is no allegation in the cited paragraphs, or elsewhere, relating to Barton's knowledge that its products, as incorporated into Cleveland's, were being marketed nationally. Nor is there any allegation in the third-party complaint or elsewhere to the effect that Barton knew that its products were being marketed in Vermont. Rather, the facts are that Barton sold its products in the Midwest and there were never any significant sales in Vermont. If there were sales in Vermont, they were incidental, not something that Barton should have anticipated.

Cleveland Lithichrome has not made a prima facie showing of the minimum contacts necessary to support personal jurisdiction in Vermont.

*Reasonableness*

Even if it had, jurisdiction in Vermont would be unreasonable. As in *Asahi*, the dispute at issue—third-party indemnification—is completely tangential to the underlying tort case and has nothing to do with Vermont or its citizens. Barton would not be involved in this case but for Cleveland's indemnification claim. Vermont has no interest in an indemnification claim between two out-of-state corporations that has no effect on its citizens. The burden of defending such a claim in Vermont may not be as high as Asahi's burden of defending in California, but it is quite similar. Cleveland is free to bring its claim in another jurisdiction in which due process concerns are more readily satisfied.

*Returning to Vermont Law*

In briefing, both parties have relied on *O'Brien v. Comstock*, 123 Vt. 461 (1963). In *O'Brien*, Vermont consumers alleged that they were injured by the presence of glass in a can of beans. They sued the out-of-state manufacturer in Vermont. There were *no facts whatsoever* in the record regarding how the can had come to Vermont. The sole jurisdictionally significant allegation was conclusory: that the can had been put into the stream of commerce and somehow ended up in Vermont. *Id*. at 465. That was it. The Court ruled that the bare allegation that the product had moved in the stream of commerce was not sufficient to establish personal jurisdiction in Vermont.

> The vital factor in the statute is the intentional and affirmative action on the part of the nonresident defendant in pursuit of its corporate purposes within this jurisdiction. A single act, purposefully performed here, will put the actor within the reach of the sovereignty of this state . . . . So will active participation in the Vermont market, either by direct shipment, or by way of transmittal through regular distributors presently serving the Vermont marketing area.
>
> The jurisdictional power to deal personally with a nonresident defendant in transitory actions of this type must be generated by the defendant's intentional participation here. Thus when a plaintiff seeks to reach a foreign corporate defendant in personam by service on our secretary of state, it is incumbent upon the claimant to plead sufficient facts to demonstrate that the defendant is causally responsible for the presence of the injuring agency within the State of Vermont.

7

Without such a presentation in the record there is no justification for the conclusion that the defendant has yielded to the jurisdiction of our courts by its own volition.

*Id*. at 464–65.

*O'Brien* is not helpful authority in this case. At most, given the paucity of facts available for the Court to analyze, *O'Brien* is fairly read as rejecting the theory that even the slightest movement in the stream of commerce necessarily establishes personal jurisdiction. Rejection of such a theory is consistent with *World-Wide Volkswagen* and *Asahi*.

Even if one could locate a distinction between *O'Brien* and subsequent United States Supreme Court authority, it would not matter. *O'Brien* long predates *World-Wide Volkswagen* and *Asahi*, and the inquiry here is a federal constitutional one. If the relevant Vermont long-arm statute is intended by the legislature to reach as far as federal due process permits, and federal due process standards have changed since *O'Brien*, then the federal principles control. Vermont extends personal jurisdiction as far as, but not farther than, federal due process standards permit.

The last time the Vermont Supreme Court cited *O'Brien* was in *Chittenden Trust Co. v. Bianchi*, 148 Vt. 140, 142 (1987), the same year that *Asahi* was decided. The Court reiterated the position of *O'Brien*, that personal jurisdiction over a nonresident defendant must be predicated on "intentional and affirmative action." The *Chittenden Trust Co.* case was decided one month after *Asahi*, included no citation to *Asahi*, and reflects no apparent awareness of *Asahi*. The Vermont Supreme Court has not cited *O'Brien* since. The court finds *O'Brien* unhelpful in this case.

Cleveland has not established a prima facie showing that Barton purposefully availed itself of the privilege of conducting business in Vermont, knew that its products would be marketed in Vermont or purchased by Vermont consumers, and that jurisdiction here would be reasonable and meets due process requirements.

ORDER

For these reasons, Barton's motion to dismiss is granted.

Dated:                                          _____
                                                Geoffrey Crawford,
                                                Superior Court Judge

8