**Kevin A. JONES, on behalf of himself and others similarly situated, Plaintiff,**

**v.**

**HALSTEAD MANAGEMENT COMPANY, LLC, Brown Harris Stevens LLC Group, Brown Harris Stevens, LLC, and Terra Holdings, LLC, Defendants.**

**Halstead Management Company, LLC, Brown Harris Stevens LLC Group, Brown Harris Stevens, LLC, and Terra Holdings, LLC, Third–Party Plaintiffs,**

**v.**

**Sterling Infosystems, Inc., d/b/a Sterlingbackcheck, Third–Party Defendant.**

No. 14–CV–3125 VEC.

United States District Court, S.D. New York.

Signed Jan. 27, 2015.

Monica Welby, Sally B. Friedman, New York, NY, David A. Searles, James A. Francis, John Soumilas, Francis & Mailman, P.C., Philadelphia, PA, for Plaintiff.

Edmund M. O'Toole, Sarah Sohyun Park, Venable LLP, New York, NY, for Defendants/Third–Party Plaintiffs.

Michael Charles O'Neil, Albert Edward Hartmann, Reed Smith LLP, Chicago, IL, Casey Devin Laffey, Evan K. Farber, Reed Smith LLP, New York, NY, for Third–Party Defendant.

## ORDER

VALERIE CAPRONI, District Judge:

Congress enacted the Fair Credit Reporting Act ("FCRA" or "Act"), 15 U.S.C. § 1681 *et seq.*, to "ensure fair and accurate credit reporting ... and protect consumer privacy." *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). As is relevant here, the Act covers the furnishing of a consumer report that is used for the purpose of determining whether a person is eligible to be hired for a particular job. 15 U.S.C. § 1681a(d)(1)(B).

Halstead Management Co. ("Halstead"), a large property management firm in New York owned by defendant Terra Holdings LLC (collectively "Terra"), understandably conducts criminal records checks prior to employing staff for any of the buildings it manages.[1] Plaintiff Kevin Jones alleges that he was offered a job as a doorman by Halstead but that his offer was revoked on the basis of an inaccurate background report furnished by third-party defendant Sterling Infosystems, Inc. ("Sterling").[2] According to Plaintiff, the report was provided to Halstead even though he was not given notice of the report or a written description of his rights under the FCRA. Compl. ¶ 4 (Dkt. 52). He claims that he did not have a meaningful opportunity to challenge the erroneous report before Halstead took adverse action with respect to his employment. Compl. ¶ 6. Count I of the Amended Complaint alleges that Halstead failed to disclose, in an FCRA-compliant way, that a consumer report may be obtained for employment purposes. Compl. ¶¶ 62–64. Count II of the Amended Complaint alleges that Halstead willfully or negligently violated the FCRA by failing to provide Plaintiff with pre-adverse action notice, a copy of his consumer report, or a written description of his rights under the FCRA with sufficient time to dispute the report before Halstead took an adverse action with regard to his employ-

---

1. Terra is the parent company of defendants Halstead, Brown Harris Stevens LLC Group, and Brown Harris Stevens LLC. Compl. ¶¶ 9–11. The Court will refer to the defendants collectively as "Terra Defendants". Although Terra was not yet a named party when the third-party plaintiffs filed the third-party complaint, *see* Dkt. 24, the Court will refer to the third-party plaintiffs as the "Terra Defendants" or "Third–Party Plaintiffs" for the sake of clarity.

2. Sterling has a contractual agreement to furnish consumer reporting information, including a criminal background check, to Terra. Compl. ¶ 20.

ment application based on the information contained in the report. Compl. ¶¶ 66–72.[3]

The Terra Defendants filed a Third–Party Complaint against Sterling alleging that, because Terra engaged Sterling to perform background checks and issue pre-adverse action notices on its behalf, Sterling would be liable for any claim that the Terra Defendants failed to comply with the FCRA. Dkt. 24.

Halstead moved to dismiss Count I of the Amended Complaint based on a signed disclosure form (the "Sterling Disclosure") that it attached as an exhibit to its motion, *see* Park Decl. Ex. A (Dkt. 60–1), but that was not attached to or incorporated into the Amended Complaint, *see* Halstead Mem. at 2. Halstead argues that the Sterling Disclosure Form complied with Section 1681b(b)(2) of the FCRA and, therefore, Count I of the Complaint failed to state a claim for relief. Sterling,[4] joined by the Terra Defendants, moved to dismiss Count II of the Amended Complaint, arguing that Count II failed to state a cause of action because Plaintiff was given an opportunity to dispute the adverse information allegedly contained in Plaintiff's report prior to Halstead taking adverse action. Dkt. 64, Halstead Mem. at 11. By separate motion, Sterling moved to dismiss the Third–Party Complaint's claims for negligence (Count II), negligent misrepresentation (Count III), and common-law indemnification (Count IV) and contribution (Count V). Dkt. 44.

For the reasons set forth below, the motions to dismiss the Amended Com-plaint are DENIED. Sterling's motion to dismiss Count III of the Third–Party Complaint is GRANTED; the remainder of Sterling's motion to dismiss the Third–Party Complaint is DENIED.

## I. FACTUAL ALLEGATIONS [5]

### a. Facts Relating to Plaintiff's Complaint Under the FCRA

Plaintiff applied for a position as a doorman at a Halstead-managed property on July 12, 2012. Compl. ¶¶ 25–26. Following an interview, Plaintiff was offered the job and accepted. *Id.* He was told that the opening needed to be filled promptly and that he would start "as soon as possible." *Id.* Plaintiff completed employment paperwork that included Halstead's standard authorization and disclosure form (the "Halstead Disclosure"). Compl. ¶ 27; Compl. Ex. A. The Halstead Disclosure authorized Halstead to obtain a consumer or investigative consumer report about Plaintiff, and advised Plaintiff that he was entitled to be advised of the nature and scope of the investigation requested within a reasonable time after making a written request for the same. It also contained various other acknowledgements and waivers, including, for example: an acknowledgement that Halstead, as the managing agent, collects and processes applications but that all actual employment decisions are made by the client building; a waiver of any claim against Halstead arising from employment by a client building; and an au-

---

**3.** Plaintiff filed this consumer class action on behalf of himself and similarly situated applicants who applied for employment with all companies owned by Terra and who were the subject of a background check obtained from Sterling that was used by Terra or one of its subsidiaries to make an adverse employment decision regarding his or her application for employment. Compl. ¶ 54(b).

**4.** A third-party defendant "may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim," Fed. R.Civ.P. 14(a)(2)(C), which includes failure to state a claim pursuant to Rule 12(b)(6).

**5.** All facts are taken from the Amended Complaint unless otherwise indicated.

thorization to Halstead to obtain information about his background, including his criminal record, in making an employment decision. Compl. ¶¶ 27–29; Compl. Ex. A.

Although not mentioned in the Amended Complaint, Plaintiff also signed a document on a form from Sterling (the "Sterling Disclosure"). The Sterling Disclosure, which was provided to the Court by the Terra Defendants in their Motion to Dismiss the Amended Complaint, was signed by Plaintiff[6] and authorized the "Company"[7] to obtain a consumer or investigative consumer report about Plaintiff "as part of the hiring process" and included an authorization from Plaintiff. Park Decl. Ex. A (Dkt. 60–1).

Terra's human resources department sent the materials to Sterling to obtain a credit check, criminal background check, and drug test. Compl. ¶ 41. Under Sterling's contract, it would "score" the results of an applicant's background check based on a Terra-approved adjudication matrix and indicate to Terra whether the applicant was "eligible" or "ineligible" for employment. Compl. ¶¶ 15, 18, 20. On July 13, 2012, Terra received Plaintiff's background report from Sterling, which, inaccurately, reported four criminal convictions.[8] Compl. ¶ 42. On July 16, 2012, Terra informed Halstead that Plaintiff's background report contained several criminal charges and that Plaintiff "did not meet the building's hiring criteria."

Compl. ¶ 44. That day, a Halstead representative called Plaintiff and informed him over the phone that his background check contained criminal history information. Compl. ¶ 45. Plaintiff told the representative that the report was inaccurate because he had no criminal record history. Compl. ¶ 46.

Plaintiff received a letter by mail dated July 17, 2012, on Halstead letterhead[9] titled "Pre–Adverse Action Notice" (the "Notice"). Compl. ¶ 47; Compl. Ex. B. The Notice stated:

> **Sterling Infosystems, Inc.** has reported to us the following information:
>
> **Criminal Report.**
>
> *Based on this information,* subject to you successfully challenging the accuracy of this information, *we have decided to revoke your conditional offer of employment.*
>
> . . . .
>
> If you believe the information above is not accurate, please contact **Sterling Infosystems, Inc.** within five business days of receipt of this letter.
>
> This will give you an opportunity to contact us if you want to dispute the report submitted by **Sterling Infosystems, Inc.**
>
> Sincerely,
>
> Halstead Management, LLC as agent for 45 East 62nd Street Corp.

6. Plaintiff has not disputed that he signed the Sterling Disclosure.

7. Interestingly, the form Plaintiff signed provides "I understand that [Insert Company Name] ('COMPANY') will use Sterling ... to obtain a credit report. . . ." Halstead's name, as the "Company," appears nowhere on the Sterling Disclosure.

8. Sterling reported to Terra that Plaintiff had New York state criminal convictions for operating a motor vehicle under the influence of

drugs or alcohol, attempted petit larceny, attempted forgery, violation of probation for aggravated unlicensed operation of a motor vehicle and operating a motor vehicle under the influence of drugs or alcohol. Compl. ¶ 51. None is accurate.

9. Although the letter had "Halstead Management Company, LLC" on the letterhead, the bottom of the page contained Sterling's (not Halstead's) address, telephone number, and website information. *See* Compl. Ex. B.

Compl. Ex. B (bolded emphasis in original, italicized emphasis added). The criminal report was not accurate; Plaintiff obtained an official Record of Arrest and Prosecution from the New York State Division of Criminal Justice Services on August 29, 2012, confirming that he has no arrests or convictions in New York State. Compl. ¶ 52.

Plaintiff argues that the Notice, dated July 17, revoked his offer of employment based upon the consumer report furnished by Sterling—a revocation that occurred before he received notice that Halstead intended to take adverse action on the basis of the report, before he was provided with a copy of the report, and before he had a meaningful opportunity to dispute it—all in violation of FCRA. Compl. ¶ 48.

### b. Facts Relating to the Third–Party Complaint [10]

The Third–Party Complaint alleges that, during the relevant time period, the Third–Party Plaintiffs, through their parent Terra, engaged Sterling to provide background checks for employment applicants. TPC ¶¶ 2, 9. Terra used Sterling to conduct credit check and criminal background checks on applicants for employment to any of its various subsidiaries. TPC ¶¶ 10, 16. If Terra determined that the information furnished in the report necessitated a "pre-adverse action" notice, it instructed Sterling to send the notice on behalf of whatever company (*e.g.*, Halstead) was the prospective employer. TPC ¶¶ 12, 14.

Consistent with this practice, Terra directed Sterling to send Plaintiff a "pre-adverse action" notice on July 16, 2012, based on the criminal offenses reported in Sterling's background check. TPC ¶¶ 17–18. Later that day, Sterling reported to Terra that Plaintiff had contacted Sterling

to dispute the criminal results; Sterling assured Terra that it would "reach out to the courthouse and investigate further" and update the report if necessary. TCP ¶ 21.

Terra also informed a Halstead executive that Plaintiff's background report included criminal offenses and that he would be sent a "pre-adverse action" notice. TPC ¶ 19. The Third–Party Complaint claims that Halstead took no action with regards to Plaintiff's employment application while awaiting the results of Sterling's reinvestigation. TPC ¶ 22. On July 17, 2012, a Halstead executive sent an email to Terra's human resources department stating that the building's board was "anxious to hire" Plaintiff and to "please let [him] know as soon as [the dispute] is resolved." TPC ¶ 22. The executive followed up with Terra on the status of the investigation on July 19, 2012, and again on July 24, 2012. TPC ¶ 22. On July 24, 2012, Terra emailed Sterling to ask for an update on the investigation and stated that the issue was "very time sensitive as one of [their] residential buildings need[ed] to hire [Plaintiff] ASAP." TCP ¶ 23. Later that day, Sterling reported to Terra that the criminal results were "validated from the courthouse and remain[ed] unchanged." TCP ¶ 24. On August 13, 2012, Sterling reported to Terra that Plaintiff again disputed the results of the investigation and, on October 19, 2012, Sterling reported that it stood by the criminal results in Plaintiff's report. TCP ¶¶ 26–27.

The Third–Party Plaintiffs allege that if Sterling furnished an inaccurate background check for Plaintiff and continued to provide inaccurate information in investigating Plaintiff pursuant to his application for employment with Halstead, then Sterling is liable for breach of contract (TPC

---

**10.** All facts are taken from the Third Party Complaint unless otherwise indicated.

Count I), negligence in performing its contractual duties and duty to act in compliance with the FCRA (TPC Count II), and negligent misrepresentation of facts relating to Plaintiff's background check and FCRA compliance of the "pre-adverse action" notice sent to Plaintiff (TPC Count III). TCP ¶¶ 32, 34.[11] The Third–Party Plaintiffs further allege that any FCRA violations arising out of Plaintiff's background check and "pre-adverse action" notice were solely by virtue of Sterling's wrongful acts, and that Sterling is liable to them for common law contribution (TCP Count IV) and indemnification (TCP Count V). TCP ¶¶ 53–56, 64–68. Sterling moved to dismiss TCP Counts II through V.

## II. DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002); *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby

rendering the document 'integral' to the complaint," *id.* (citing *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006)), but it must "be clear that there exist no material disputed issues of fact regarding the relevance of the document," *id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.2006)). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

To evaluate whether an extraneous document is "integral" to a complaint, the Second Circuit has emphasized that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153. For example, when a legal document (such as a contract) is presented in support of a motion to dismiss and the complaint is "replete with references" to the contract and "requests judicial interpretation of [its] terms," the contract is integral to the complaint. *Id.* at 153 n. 4. On the other hand, when a complaint does not refer to the document, a question of fact exists whether the document was incorporated into the pertinent contracts, and the parties dispute how the document "relate[d] to or affect[ed] the contractual relationships," the document should not be considered on a motion to dismiss. *Id.* at 154; Fed. R.Civ.P. 12(d). When the document reflects a factual issue (such as an email correspondence) and the complaint specifically refers to the contents of the e-mail communication, the Court can "deem the e-mail incorporated in the complaint and

---

11. Neither party has produced the actual contract at issue. Therefore, the motion to dismiss Third–Party Plaintiffs' claims relies on

the facts alleged and not on the substance of the contractual terms themselves.

therefore subject to consideration in its review of the adequacy of the [allegations in the] complaint." *DiFolco*, 622 F.3d at 112. If, on the other hand, the e-mail "was not attached to the complaint, was not incorporated by reference in the complaint," and therefore "was not integral to the complaint," it is improper to consider when considering a motion to dismiss. *Id.* at 113. In all instances, "[i]n ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Id.* (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998)).[12]

### a. Count I: Plaintiff's Claim Under 15 U.S.C. § 1681b(b)(2)

■ Count I of the Amended Complaint alleges that "Defendants are liable for willfully or negligently violating [S]ection 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes." Compl. ¶ 64. The Complaint rests entirely on the contents of the Halstead Disclosure and ignores entirely the Sterling Disclosure.[13]

Halstead moves to dismiss Count I, largely ignoring the Halstead Disclosure and principally relying upon the Sterling Disclosure to demonstrate compliance with FCRA. Halstead argues that the Sterling Disclosure is properly considered in its motion to dismiss because (1) there is no dispute as to its authenticity, (2) Plaintiff had notice of the form (either because he signed it or because Halstead produced it to Plaintiff prior to the Amended Complaint being filed), and (3) the Sterling Disclosure is a disclosure provided to Plaintiff as part of his employment paperwork and therefore "integral" to Count I of the Amended Complaint. Halstead Mem. at 1–6; Halstead Reply at 3. Plaintiff counters that he did not have the form when he filed the Amended Complaint but even if he had relied on it in drafting Count I, Count I would state a claim to relief because the Sterling Disclosure it is not a document "solely consisting of" the required disclosure. Pl. Mem. at 19–20.

There is a real question whether the Sterling Disclosure should be considered when ruling on the motion to dismiss inasmuch as it is not "integral" to the Amended Complaint and Plaintiff did not "rely upon" its form and effects in drafting the Amended Complaint. (On the contrary, Plaintiff relied upon the *absence* of any disclosure other than the Halstead Disclosure in drafting the Amended Complaint.) On the other hand, Plaintiff does not dispute that he signed the Sterling Disclosure.

If there were no question that the Sterling Disclosure fully complied with the FCRA, the Court would have been inclined to provide the required notice and treat the Defendants' motion to dismiss as a motion for summary judgment. Fed. R.Civ.P. 12(d). But that is not the case. The statute requires a standalone disclosure; the only extraneous information per-

---

12. Of course, the Court need not accept factual allegations that are "blatantly contradicted" or "utterly discredited" by other documents in the pleadings. *Garcia v. Does,* 764 F.3d 170, 180 (2d Cir.2014) (citing *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

13. There may be a question of fact whether the Plaintiff was given a copy of the form prior to him receiving it after this litigation was commenced, but that question of fact is not pertinent to these motions.

mitted is an authorization by the consumer to the employer to obtain a consumer report. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii). As the Federal Trade Commission (FTC) explained in an opinion letter,[14] Congress specified a "standalone disclosure [ ] so that consumers will not be distracted by additional information at the time the disclosure is given." F.T.C. Division of Credit Practices Fair Credit Reporting Act Staff Opinion Letter from Cynthia S. Lamb, Investigator, to Richard L. Steer, Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.). Notwithstanding Defendants' arguments to the contrary, the Sterling Disclosure does not appear to be a standalone disclosure. In addition to the disclosure and an authorization, which is permitted, the Sterling Disclosure includes, *inter alia:* information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that "all employment decisions are based on legitimate non-discriminatory reasons"; the name, address and telephone of "the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report" (interestingly, the form lists three separate units, not all of which could be the "nearest"); and all sorts of state-specific disclosures that had nothing to do with Plaintiff's potential employment in New York. All of those extraneous additions to the form stretched what should be a simple disclosure form to two full pages of eye-straining tiny typeface writing.

In short, whether the question in the case is whether the Halstead Disclosure, the Sterling Disclosure, or both complied with FCRA, the Amended Complaint states a claim to relief.

 Halstead moves in the alternative to dismiss Plaintiff's allegations that any violation of Section 1681b(b)(2) was willful. Halstead Mem. at 10–11; Halstead Reply at 9–10. Halstead argues that the fact that it contracted with a third-party vendor (Sterling) to provide FCRA-compliant disclosures negates any inference that any violation of 15 U.S.C. § 1681b(b)(2) was willful on its part. Halstead Mem. at 10–11. Alternatively, Halstead argues that, if the liability waiver in the Halstead Disclosure (read alone) violates the FCRA, Halstead's interpretation of the FCRA disclosure requirements, if erroneous, was not unreasonable. Halstead Reply at 9–10. The FCRA imposes civil liability on "[a]ny person who willfully fails to comply with any requirement imposed" by the FCRA. 15 U.S.C. § 1681n(a). "Willful" in the FCRA context means "reckless disregard of statutory duty." *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). An erroneous reading of the statutory requirements of the FCRA disclosure requirements is not "reckless" unless it is "objectively unreasonable." *Id.* at 69, 127 S.Ct. 2201. Plaintiff contends that the plain language of the statute suggests that a disclosure that includes a liability waiver deviates so far from the FCRA requirement as to be "objectively unreasonable." Pl. Mem. at 21–22.

**14.** When this opinion letter was written, the FCRA did not explicitly permit the "document that consists solely of the disclosure" to include the written authorization. *See* 15 U.S.C. § 1681b(b)(2)(B) (effective Sept. 30, 1997 to Nov. 19, 1997). In 1998, Congress amended Section 1681b(b)(2)(A)(ii) to provide that the consumer's written authorization may be made in the "clear and conspicuous disclosure ... document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) (effective Nov. 2, 1998 to Nov. 26, 2002). Because this revision reflected the same policy as the opinion set forth in the 1997 letter, the interpretation is still applicable to the amended statute.

The Court agrees with Plaintiff that the Amended Complaint adequately alleges willfulness.

### b. Count II: Plaintiff's Claim Under 15 U.S.C. § 1681b(b)(3)

■ Sterling moved pursuant to Fed. R.Civ.P. 12(b)(6) and 14(c) to dismiss Count II of the Complaint, which alleged that Halstead failed to provide Plaintiff with the requisite notice prior to taking adverse action.[15] First, Sterling argues that the facts alleged are legally insufficient to state a claim that Halstead took an adverse action when it made an internal decision to revoke Plaintiff's offer of employment and stopped the onboarding process. Sterling Mem. at 10–13. Second, Sterling argues that the facts contained in *all* pleadings (inexplicably including facts that are alleged in the Third–Party Complaint against Sterling) show that Halstead refrained from taking adverse action until Sterling informed them of the results of Plaintiff's dispute. Sterling Mem. at 13–18.[16] For the reasons set forth below, Sterling's motion to dismiss Count II is denied.

Plaintiff alleged that, based on the information Sterling furnished in its report, Halstead revoked his offer of employment before providing him with notice and an opportunity to dispute the results of Ster-

ling's report. Compl. ¶ 48. Section 1681b(b) of the FCRA sets forth the "[c]onditions for furnishing and using consumer reports for employment purposes." 15 U.S.C. § 1681b(b). It requires that "before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under [the FCRA]." 15 U.S.C. § 1681b(b)(3). As is pertinent here, "adverse action" as used in the employment context means "a denial of employment or any decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii). Under the FCRA's "catchall" provision, the term "adverse action" also extends to "any action taken or determination that is made in connection with an application that was made by … any consumer" and that is "adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv). Sterling argues that, even if Halstead had formed an intent to revoke Plaintiff's offer, an internal decision to take an adverse action based on a consumer report does not violate Section 1681b(b)(3) because an adverse action does not occur until the decision is communicat-

---

**15.** The Terra Defendants joined in Sterling's motion. Halstead Mem. at 11.

**16.** Sterling's argument that the facts alleged in the Third–Party Complaint stand on equal footing as the facts alleged in the Plaintiff's Complaint when deciding a motion to dismiss is misplaced. A third-party complaint holds the third-party defendant liable "for all or part of the plaintiff's claim against the third-party plaintiff." *Bank of India v. Trendi Sportswear, Inc.,* 239 F.3d 428, 437–38 (2d Cir.2000). The Third–Party Plaintiff and Third–Party Defendant are equally adverse to Plaintiff, thus the Third–Party Complaint should not be used to determine whether the

Complaint "pleads factual content that allows the court to draw a reasonable inference that the [third-party plaintiff] is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. The cases Sterling cites do not support a different conclusion. *See Lessard v. Tyco Elec. Corp.,* No. 09–112 S., 2009 WL 3319784 (D.R.I. Oct. 13, 2009) (considering both the complaint and the third-party complaint in evaluating a motion to dismiss a *third-party* complaint); *Gladney Const., Inc. v. Edwards,* No 3:05–1746–MBS–BM, 2007 WL 2973491 (D.S.C. Oct. 5, 2007) (same); *Novinger v. E.I. DuPont deNemours & Co., Inc.,* 89 F.R.D. 588 (E.D.Pa.1981) (same).

ed or takes effect. Sterling Mem. at 11–12.

In *Safeco Insurance Company of America v. Burr,* 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), the Supreme Court considered the definition of "adverse action" in the insurance context, 15 U.S.C. § 1681a(k)(1)(B)(i). The Court noted the "ambitious objectives set out in the Act's statement of purpose, which uses expansive terms to describe the adverse effects of unfair and inaccurate credit reporting and the responsibilities of consumer reporting agencies." *Safeco,* 551 U.S. at 62, 127 S.Ct. 2201. Consistent with the Act's purpose, it is clear to the Court that a decision to revoke an offer of employment that had been accepted by the prospective employee is both a "decision for employment purposes that adversely affects … [the] prospective employee" and a "determination that is made in connection with an application that was made by … [a] consumer … and adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B).[17]

Sterling disputes as a factual matter whether Halstead had made a "final decision" to revoke Plaintiff's offer before Plaintiff had an opportunity to dispute the report and as a legal matter whether "stopping the onboarding process" constitutes an "adverse action" that would violate the FCRA. In essence, Defendants and Third–Party Defendants want this Court to ignore the plain language of the July 17 letter that they sent to Plaintiff, which stated that Halstead "[has] decided to *revoke* your conditional offer of employment" (emphasis added), because they argue that various emails among employees of Sterling and Terra (which were not incorporated into or relied upon by the Plaintiff in the Complaint) reveal a different interpretation of Halstead's position on Plaintiff's employment application. These emails, in and of themselves, present questions of fact regarding the actual state of decision-making at Halstead that the Court cannot resolve on a motion to dismiss.[18]

At this stage of the litigation, when determining whether the well-pleaded factual allegations of the Complaint "plausibly give rise to an entitlement to relief," the Court must draw "all reasonable inferences in the plaintiff's favor" and must not "assay the weight of evidence." *DiFolco,* 622 F.3d at 111, 113 (citations omitted). After all the parties have had discovery, the Defendants may well be able to demonstrate that there is no question of fact that the unequivocal language in the questionably-titled "Pre–Adverse Action Notice" was simply infelicitous because no decision had been made. Notwithstanding

---

**17.** Sterling primarily relies on *Obabueki v. Int'l Bus. Machines Corp.,* 145 F.Supp.2d 371, 391–92 (S.D.N.Y.2001), which held that "[a]n internal decision to rescind an offer is not an adverse action." *Obabueki* is distinguishable, however, because the parties failed to bring the catchall provision to the Court's attention so the Court did not consider whether forming an internal intent is an "adverse action" under that provision, and the Court emphasized that "internal discussions had no impact" on the plaintiff until the company "acted by letter" to inform him that his conditional offer of employment was withdrawn. *Id.* at 379, 391–92. Even under *Obabueki,* the Complaint sufficiently alleges adverse action because the Notice informed Plaintiff that his condition offer *had been* revoked. Cf. *Burghy v. Dayton Racquet Club, Inc.,* 695 F.Supp.2d 689, 703 (S.D.Ohio 2010) (holding that "an adverse action occurs when the decision is carried out, when it is communicated or actually takes effect"). Other district courts have distinguished *Obabueki* on similar grounds. *See Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.,* 848 F.Supp.2d 532, 539–41 (E.D.Pa.2012).

**18.** See Statement of Facts, *supra,* at Part I(b), for a discussion of the email traffic.

that possibility down the road, the Complaint adequately alleges a cause of action pursuant to FCRA § 1681b(b)(3).

Accordingly, Sterling's motion to dismiss Count II is DENIED.

### III. STERLING'S MOTION TO DISMISS COUNTS II THROUGH V OF THE THIRD–PARTY COMPLAINT

Sterling moved to dismiss the Third–Party Complaint on the bases that the claims for negligence and negligent misrepresentation failed to allege duties that arose independent from contract and that claims for contribution and indemnification are not permitted under the FCRA. Sterling TCP Mem. at 1; Sterling TCP Reply at 2–3. Third–Party Plaintiffs contend that, because FCRA compliance was contemplated by the contracting parties, Sterling had a duty to exercise reasonable care and skill to perform the contract in a manner that complied with the FCRA. Halstead TCP Mem. at 7–8. As for the common law contribution and indemnification claims, Third–Party Plaintiffs argue that because these claims were asserted under New York State law and not under the FCRA itself, New York law governs their viability. Halstead TCP Mem. at 13–14. For the reasons set forth below, Sterling's motion is GRANTED in part and DENIED in part.

#### a. Negligence and Negligent Misrepresentation

Third–Party Plaintiffs assert that Sterling breached a duty of care in two ways: first, in providing the .inaccurate background check that gave rise to Plaintiff's claim, TPC ¶¶ 39, 47; and second, in sending Plaintiff a notice that did not comply with the FCRA (if Plaintiff's claim is successful), TPC ¶¶ 38, 46, 48. Sterling acknowledges that negligence claims may be pled in the alternative to contract claims,

but challenges whether the Third–Party Complaint alleges that it owed a duty of care arising independently from the contract (for the negligence claim) or a special relationship of trust or confidence with Third–Party Plaintiffs (for the negligent misrepresentation claim) that would give rise to liability in tort. Sterling Reply at 2–3.

It is well-established that "[u]nder New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt., LLC*, 692 F.3d 42, 58 (2d Cir.2012) (citation omitted). The legal duty must "spring from circumstances extraneous to, and not constituting elements of, the contract." *Id.* (quoting *Clark–Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)). For example, "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship." *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992). "Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." *Bayerische*, 692 F.3d at 58. The existence of duty is a question of law; however, "once the nature of the duty has been determined as a matter of law, whether a particular defendant owes a duty to a particular plaintiff is a question of fact." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996).

The Second Circuit has found duties imposed by law arising from the circumstances surrounding the forming of a contract and from the nature of the contracted-for services. In *Bayerische*, the Second Circuit concluded that a com-

plaint alleged a duty that was extraneous to the parties' contract because the plaintiffs alleged that they detrimentally relied on the defendant's representations as to the manner in which it would perform the contractual duties. 692 F.3d at 59. The court explained that "[t]his legal duty, though *assessed* largely on the standard of care and the other obligations set forth in the contract, would *arise* out of the independent characteristics of the relationship between" the parties. *Id.* In *William Wrigley Jr. Co. v. Waters,* the court determined that when a party held itself out as an expert and contracted to conduct services that implicated legal interests, the law imposed an extraneous duty and "the appropriate standard of care in such cases is 'the care and caution proper to [their] calling.'" *William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 603 (2d Cir.1989) (quoting *Ultramares Corp. v. Touche, Niven & Co.,* 255 N.Y. 170, 179, 174 N.E. 441 (1931)).

The facts alleged in the Third–Party Complaint plausibly (but just barely) give rise to an inference that Sterling owed a duty to provide "pre-adverse action" notices in a manner that complied with the FCRA, but not that Sterling owed an extra-contractual duty to provide accurate background checks. Drawing all reasonable inferences in favor of the Third–Party Plaintiffs, the Third–Party Complaint plausibly alleges that the Third Party Plaintiffs engaged Sterling to provide the contracted-for services with the understanding that Sterling would perform those services in a manner that complied with the FCRA. The Third–Party Complaint alleges that Third–Party Plaintiffs "engaged Sterling to provide certain services, including assisting compliance with the FCRA and the issuance of Pre–Adverse Action Notices," TPC ¶ 2; that they "relied on Sterling to send Pre–Adverse Action Notice [sic] to Applicants, in compliance with the FCRA," TPC ¶ 14; and that, "[r]elying on information provided by Sterling, [Terra's] HR Department directed Sterling on July 16, 2012 to send the Pre–Adverse Action Notice in conformity with the FCRA to [Plaintiff]," TPC ¶ 18. Moreover, when Sterling sent Plaintiff the Notice, Sterling did so at Terra's behest and on Halstead's letterhead.

■ The Third–Party Complaint alleges an extraneous duty with respect to Sterling's sending "pre-adverse action" notices. Sterling had a duty to perform this service in a manner that complied with the FCRA because FCRA compliance was the very purpose of the contractual relationship, and Sterling was or should have been aware that if it sent a non-compliant notice then it exposed Halstead to liability. *See* TPC ¶¶ 2, 38, 48. The Third–Party Complaint does not, however, contain any factual allegations to support an inference that Sterling owed a duty above and beyond its contractual duties to perform the actual background checks or that Sterling performed the background checks in a manner that did not comply with the FCRA—only conclusory statements that if the information was inaccurate then Sterling must have breached a duty of care. *See* TPC ¶ 39. The Third–Party Complaint acknowledges that it was not uncommon for a report that initially turned up a criminal history to be disputed and corrected. TPC ¶ 15. Thus, the Third–Party Complaint's negligence claim arising out of Sterling's furnishing an "inaccurate" background check is dismissed.

Because Third–Party Plaintiffs adequately pleaded that Sterling breached a duty extraneous to its contractual duties, Sterling's argument that the claims are barred by the economic loss rule also fails as to their negligence claim. Sterling TPC

Reply at 6; *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 17 (2d Cir. 2000).

Third–Party Plaintiffs have not adequately alleged that Sterling owed a duty to speak with care regarding the compliance of the "pre-adverse action" notices sent on their behalf to state a claim to relief for negligent misrepresentation. A provider of services has a "duty to speak with care" when the provider "possess[es] unique or specialized expertise, or [is] in a special relationship of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell*, 89 N.Y.S.2d at 263, 652 N.Y.S.2d 715, 675 N.E.2d 450. The relationship may "aris[e] out of contract or otherwise," but "there must be some identifiable source of a special duty of care. The existence of such a special relationship may give rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Id.* at 263–64, 652 N.Y.S.2d 715, 675 N.E.2d 450. "Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." *Id.* at 264, 652 N.Y.S.2d 715, 675 N.E.2d 450. In determining whether justifiable reliance exists, the finder of fact should consider "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or· confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.*

The Third–Party Plaintiffs allege that they relied on "Sterling's representations regarding sending pre-Adverse Action Notice[s] in connection with employment applications," including representations that "Sterling had sent Pre–Adverse Action Notice[s] in compliance with the FCRA." TPC ¶¶ 46, 48. Nowhere, however, does the Third–Party Complaint allege facts that support its conclusory statement that Third–Party Plaintiffs had a "special relationship of trust or confidence" with Sterling, TPC ¶ 44, or that· Sterling "held or appeared to hold unique or special expertise" which would otherwise give rise to a heightened duty of care in the context of commercial speech. The Third–Party Plaintiffs allege that they were "in privity of contract and/or in a relationship so close as to approach that of privity with Sterling," TPC ¶ 43, and that they "engaged Sterling as a vendor to provide various services ... with respect to applicants for employment," TPC ¶ 9. Those allegations simply do not allow the Court to infer that the parties had anything other than a typical arm's length business relationship.

### b. Indemnification and Contribution

Sterling moves to dismiss Third–Party Plaintiffs' common law claims for indemnification and contribution arguing that neither the statute nor federal common law provide for such claims in connection with FCRA liability. Sterling TPC Mem. at 10–11; Sterling TPC Reply at 7–9. The only support Sterling offers for the proposition that claims for indemnification and contribution in the context of FCRA liability are not cognizable under federal common law is district court opinions from outside of this circuit. Third–Party Plaintiffs argue that this Court should follow *Yohay v. City of Alexandria Emp. Credit Union, Inc.*, 827 F.2d 967 (4th Cir.1987), in which the Fourth Circuit explicitly recognized a right to indemnification for FCRA liability against a party who is the "active" or "primary" wrongdoer when the indemnitee is the "passive" or "secondary" wrongdoer. *Yohay*, 827 F.2d at 973. *Yo-*

*hay* did not address whether indemnification for a violation of the FCRA is governed by state or federal law, but applied the state law standard. 827 F.2d at 973–974; *but see McMillan v. Equifax Credit Info. Servs., Inc.,* 153 F.Supp.2d 129, 132 (D.Conn.2001) ("Where a third party complaint seeks indemnification or contribution for violation of a federal statute, federal law applies." (citations omitted)). Third–Party Plaintiffs argue that their claims for indemnification and contribution sounding in tort arise under New York common law. Halstead TPC Mem. at 14. Under *Yohay,* these claims would be cognizable.

■ At best, Sterling has established that it is unsettled in this circuit whether tort claims for indemnification or contribution are cognizable for FCRA liability under federal common law. For now, the Court is inclined to follow *Yohay.* Further litigation may reveal that the terms of Sterling's contract provide for these remedies, obviating the necessity of tort damages. Sterling's motion to dismiss the Third–Party Plaintiffs' claims for contribution and indemnification is therefore DENIED.

## IV. CONCLUSION

Halstead's motion to dismiss Count I and Sterling's motion to dismiss Count II of the Amended Complaint are DENIED.

Sterling's motion to dismiss Count II of the Third–Party Complaint pertaining to Sterling's alleged negligence in performing Plaintiff's background check and all of Count III for negligent misrepresentation is GRANTED. Sterling's motion to dismiss Counts IV and V of the Third–Party Complaint is DENIED.

**SO ORDERED.**